UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-CV-60965-COHN/SELTZER

CHRISTOPHER GREEN,

      Plaintiff,

v.

ANTHONY MICELI, individually, and
the CITY OF LAUDERHILL, a Florida
Municipal corporation,

      Defendants.

_____/

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendants' Motion for Summary Judgment

[DE 11].  The Court has carefully reviewed the Motion for Summary Judgment,

Plaintiff's Response in Opposition [DE 25], Defendants' Reply Memorandum in Support

of Motion for Summary Judgment [DE 28], and is otherwise advised in the premises.

### I. BACKGROUND

This action concerns claims of false arrest and false imprisonment in violation of

the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983, as well as false

arrest, false imprisonment, and malicious prosecution, pursuant to Florida law.  The

claims arise from an incident on July 24, 2006, when Defendant Anthony Miceli

("Defendant Miceli"), a police officer employed by Defendant City of Lauderhill, arrested

Plaintiff Christopher Green, Sr.

On July 24, 2006, Christopher Jay Green, Jr. ("Green, Jr."), a sixteen-year-old,

was playing basketball at a park in Lauderhill, FL.  DE 22-1 ¶ 2 (Green, Jr.'s Affidavit).

During the basketball game, an argument took place and someone threw a basketball

in the face of Green, Jr.'s friend, Omari Tyson.  Id. ¶ 4.  Omari Tyson bent over and covered his face.  Id.  Several adult males then rushed the basketball court and attacked Omari Tyson.  Id.

Green, Jr. attempted to intervene to stop the fight, but an adult male told Green, Jr., "Let them fight."  Id.  Green, Jr. attempted to move closer, but someone behind him placed him in a choke hold and said, "Don't jump in or I'll shoot your ass."  Id.  A police officer who was watching a youth football game on the other side of the park began to run towards the basketball court.  Id. ¶ 5.  The police officer pulled people off of Omari Tyson.  Id.  The person holding Green, Jr. in a choke hold released Green, Jr. and pushed him away.  Id.

Green, Jr. then called Omari Tyson's mother, Monica Marie Tyson, and informed her of what had happened.  Id. ¶ 6.  Monica Marie Tyson told Green, Jr. that she was on her way to the park.  Id.  Pursuant to Monica Marie Tyson's instructions, Green, Jr. went to Monica Marie Tyson's house and told Monica Marie Tyson's boyfriend what had taken place.  Id. ¶ 7.  The boyfriend drove Green, Jr. back to the park.  Id.  On the way back to the park, Green, Jr. called Plaintiff, his father, and told him what had happened. Id. ¶ 8.

Upon returning to the park, Green, Jr. saw Omari Tyson speaking with a police officer.  Id. ¶ 9.  Monica Marie Tyson was nearby.  Id.  Green, Jr. approached the area where Omari Tyson was speaking with a police officer.  Id. ¶ 10.  Omari Tyson's face was bleeding and swollen.  Id.

After a couple of minutes, Green, Jr. could hear his father calling his name and Green, Jr. called back, "Here I am."  Id. ¶ 11.  Green, Jr. then explained to Plaintiff that

2

some men had jumped Omari Tyson and that someone had threatened to shoot Green, Jr. Id. ¶ 12. Plaintiff then approached Omari Tyson. Id. There were three or four officers in the immediate vicinity. Id. Plaintiff asked Omari Tyson if he was alright and Plaintiff said that the park was not safe for the kids. Id. According to Green, Jr., Plaintiff was speaking "in a calm manner, but loud enough that Omari [Tyson's] mother and boyfriend could hear, along with an officer standing nearby." Id.

Defendant Miceli's report of the incident tells a different story. Defendant Miceli's report states that Plaintiff

> began to scream and wave his hands in an aggressive manner. Green was shouting "I am going to kill who ever did this to my friend." I attempted to calm Green down by advising him several times to please lower his voice and back away from me because he was impeding my investigation. He continued to obstruct me by stating 'I don't care take me to jail officer, I am going to kill who ever did this.'

DE 17 at 69 ("Defendants' Statement of Facts").

Plaintiff has reviewed Defendants' Statement of Facts and avers that "the scene as described by the officers is inaccurate and false." DE 22-2 ¶ 3 ("Plaintiff's Affidavit"). Specifically, according to Plaintiff, the probable cause affidavit falsely states that Plaintiff approached Defendant Miceli "from behind and began to scream and wave his hands in an aggressive manner, shouting I am going to kill who ever did this to my friend." See id. Likewise, Plaintiff avers that he "did not approach anybody 'in a very animated state with fists clinched [sic].'" Id. ¶ 4. Plaintiff avers that he "was not in a rage, [his] fists were not clinched [sic], and [he] was not waving [his] hands." Id. ¶ 6. Plaintiff further avers that he did not threaten to kill anyone. Id.

To the contrary, Plaintiff avers that he was talking with another police officer

"who was basically agreeing with [him] about the problems with the park."  Id. ¶ 5.

According to Plaintiff, Defendant Miceli first approached him as he was speaking with

the other officer.  Id.  Defendant Miceli then stated, "I told you to leave."  Id.  Defendant

Miceli's instruction caused Plaintiff to believe that Defendant Miceli had confused him

with someone else who had been told to leave earlier.  Id.

Green, Jr. corroborates Plaintiff's story.  According to Green, Jr., as Plaintiff

complained about the situation to a police officer, Defendant Miceli approached Plaintiff

and said, "I told you to leave."  Green, Jr.'s Affidavit ¶ 13.  Another officer responded, "I

think he's a parent."  Id.  Defendant Miceli continued to tell Plaintiff to leave.  Id.

Plaintiff tried to explain that he was Green, Jr.'s father.  Id.  Defendant Miceli asked

Plaintiff if Plaintiff wanted to go to jail.  Id.  Plaintiff asked, "For what?"  Id.  Defendant

Miceli then responded, "You must want to go to jail tonight."  Id.  Plaintiff answered, "I

didn't do anything," at which time Defendant Miceli handcuffed Plaintiff.  Id.  Defendant

Miceli shoved Plaintiff and "said something about how it's always the black parents in

the community who cause problems."  Id. ¶ 14.  Defendant Miceli knocked Plaintiff's

cap off of his head and threw Plaintiff's wallet against the side of the car.  Id.

Monica Marie Tyson corroborates the facts asserted in Green, Jr.'s affidavit.

See generally DE 16 ("Monica Marie Tyson's Deposition").  Monica Marie Tyson

testified that when she arrived at the park, before Defendants arrested Plaintiff, she

> asked [a police officer] what actions did they take, what occurred.  They said,
> well ma'am, by the time we reached there, everyone had gone already. . . .  And
> I asked them.  I said, well, he [i.e., Omari Tyson] is all busted up.  He is bruised.
> He is bleeding.  He is a minor.  Why didn't you call an ambulance or support
> him in any way to get him some help or even contact the parent.  Well, they
> basically didn't answer my question.  You know, they got a little hostile a little
> bit, you know.  And they said, ma'am, no one else is in the park . . . .

4

Monica Marie Tyson Deposition at 19.  Furthermore, when asked if anyone else was around when she was talking to the police in the park, Monica Marie Tyson responded, "No, no one.  No.  No.  There was no one around at that present time."  Id. at 20.  When asked, "[w]as there ever a time that you observed Mr. Green interacting with the officers that any sort of a hostile crowd came into the area?", Monica Marie Tyson answered, "[t]here was no one around at that time.  Nobody was there."  Id. at 31.[1]

Moreover, Monica Marie Tyson testified in her deposition that another officer, an Asian officer, instructed Defendant Miceli not to arrest Plaintiff because he didn't deserve to be arrested.  DE 16 at 29.  Likewise, Plaintiff in his statement to the Lauderhill Police Department heard another officer, a Caucasian, tell Defendant Miceli, "look, he's an upset parent . . . send him home, you know it's not worth it."  DE 17 at 25-27.

Nonetheless, Defendant Miceli arrested Plaintiff for violating section 843.02,

---

[1]       The record contains conflicting information concerning how many people were in the park when Plaintiff arrived on the scene.  For example, Plaintiff testified at his deposition that "[t]here were a lot of people out there . . . standing right there on the side."  DE 13 at 43.  Two questions later, however, Defendants' counsel asked Plaintiff, "But were there other people in the park who were at least near the police officers when you arrived?" Plaintiff answered, "Not that I could say.  All I saw policeman were standing to the left, they were just standing there.  I didn't see any activity or nothing.  There were a lot of people out there as usual and I saw a policeman there."  Id. at 44.
        Taking the facts in the light most favorable to Plaintiff, the Court finds that several people were in the park when Plaintiff arrived, but they were not in the immediate vicinity of the police officers, Green, Jr., Omari Tyson, and Monica Marie Tyson.  To the extent the record indicates that a hostile crowd formed, the crowd formed only after, and in reaction to, Plaintiff's arrest.

Florida Statutes.[2]  Defendant Miceli then transported Plaintiff to the City of Lauderhill's Police Department and the Broward County Jail for incarceration.  Thereafter, on April 12, 2007, a jury, after only eight minutes of deliberations, returned a verdict of not guilty as to all criminal charges initiated against Plaintiff by Defendant Miceli.  See DE 13 at 25-26.  Plaintiff has since filed a complaint against Defendant Miceli and Defendant City of Lauderhill.  See DE 1 ("Complaint").

In the Complaint, Plaintiff asserts four counts: Count I asserts a claim against Defendant Miceli for false arrest and false imprisonment in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983;[3] Count II asserts a claim against Defendant City of Lauderhill for false arrest and false imprisonment pursuant to Florida law; Count III asserts a claim against Defendant Miceli for false arrest and false imprisonment pursuant to Florida law; and Count IV asserts a claim against Defendant Miceli for malicious prosecution, also pursuant to Florida law.  Defendants have moved for summary judgment.

II. DISCUSSION

**A. Standard of Review**

The Court may grant summary judgment "if the pleadings, the discovery and

---

[2]    Section 843.02, Florida Statutes, provides, in pertinent part, as follows: "Whoever shall resist, obstruct, or oppose any officer . . . in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . ."

[3]    Pursuant to 42 U.S.C. § 1983, a person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and that the movant is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c).   The movant "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record]

which it believes demonstrate the absence of a genuine issue of material fact."  Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must

point out to the Court that there is an absence of evidence to support the non-moving

party's case.  Id. at 325.

　　　After the movant has met its burden under Rule 56(c), the burden of production

shifts and the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of  Fed. R.

Civ. P. 56(e), the non-moving party "may not rely merely on allegations or denials in its

own pleading," but instead must come forward with "specific facts showing a genuine

issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

　　　At the summary judgment stage, the judge's function is not to "weigh the

evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In

making this determination, the Court must decide which issues are material, and "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment.  Factual disputes that are irrelevant

or unnecessary will not be counted."  Id. at 248.

7

**B. Disputed Issues of Fact Exist**

Defendant Miceli argues that he is entitled to summary judgment "based upon qualified immunity because his actions did not amount to a constitutional violation, nor were any alleged violations clearly established at the time of Green's arrest."  Motion for Summary Judgment at 2.  Alternatively, Defendants contend that they are "entitled to summary judgment because there was probable cause for Green's arrest."  Id.

1. Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Here, there is no dispute that Defendant Miceli was performing his discretionary functions as an officer.  Thus, the burden shifts to Plaintiff to show that qualified immunity is not appropriate.  Davis v. Williams, 451 F.3d 759, 762 (11th Cir. 2006) (citing Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).

Qualified immunity is a two-part inquiry.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  First, the Court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id.  "If, assuming the plaintiff's allegations are true, no such right would have been violated, the analysis is complete."  Davis, 451 F.3d at 762.  If, however, "a constitutional violation can be made out on the plaintiff's facts, [the Court] must determine 'whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law.'"

8

Id. (quoting Garrett v. Athens-Clarke County, 378 F.3d 1274, 1278-79 (11th Cir. 2004)).

In other words, Plaintiff must prove both that there was a violation of a constitutional

right and that the right was clearly established.

 "This is not to say that an official action is protected by qualified immunity unless

the very action in question has previously been held unlawful . . . but it is to say that in

the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536

U.S. 730, 739 (2002) (citation omitted).  "[O]fficials can still be on notice that their

conduct violates established law even in novel factual circumstances . . . .  Although

earlier cases involving 'fundamentally similar' facts can provide especially strong

support for a conclusion that the law is clearly established, they are not necessary to

such a finding."  Id. at 741.  Moreover, "it is clearly established that an arrest made

without probable cause violates the Fourth Amendment."  Davis, 451 F.3d at 762 (citing

Thornton v. City of Macon, 132 F.3d 1395, 1399 (11th Cir. 1998); Von Stein v.

Brescher, 904 F.2d 572, 579 (11th Cir. 1990)).

 "In the context of a claim for false arrest, an officer is entitled to qualified

immunity where that officer had 'arguable probable cause,' that is, where 'reasonable

officers in the same circumstances and possessing the same knowledge as the

Defendants could have believed that probable cause existed to arrest' the plaintiff."

Davis, 451 F.3d at 762 (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th

Cir. 2004); Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990)).  To determine

whether Defendant Miceli had arguable probable cause to arrest Plaintiff, the Court

must look to the totality of the circumstances.  Id. at 763.  As noted above, because this

case is at the summary judgment stage, the Court must view the totality of the

circumstances in the light most favorable to Plaintiff, the nonmoving party.  Id. (citing Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002); Evans v. Stephens, 407 F.3d 1272, 1277 (11th Cir. 2005)).  Furthermore, whether arguable probable cause existed to arrest Plaintiff depends upon what amounts to probable cause under Florida law for obstruction of justice.  Id. at 764.

Obstruction of justice is codified in section 843.02, Florida Statutes, which provides as follows: "Whoever shall resist, obstruct, or oppose any officer . . . in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . ."  Fla. Stat. § 843.02.  "To support a conviction pursuant to section 843.02, the state must prove: '(1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that lawful duty.'"  Davis, 451 F.3d at 764 (quoting Slydell v. State, 792 So. 2d 667, 671 (Fla. Dist. Ct. App. 2001); S.G.K. v. State, 657 So. 2d 1246, 1247 (Fla. Dist. Ct. App. 1995)).

a. A Disputed Issue of Fact Exists Regarding Whether Defendant Miceli Was Engaged in the Lawful Execution of a Legal Duty when He Arrested Plaintiff

Defendants argue that "[t]here can be no legitimate dispute that a reasonable officer would have concluded . . . that Officer Micelli was engaged in the lawful execution of a legal duty" when he was investigating "a reported battery [which] escalated to a fight, at a public park with a known history of violent activity" and then attempted "to control the hostile crowd."  Motion for Summary Judgment at 4.  The Court recognizes that police officers are engaged in the lawful execution of a legal duty

10

when requesting assistance or cooperation "in an ongoing emergency that presents a serious threat of imminent harm to person or property."  D.G. v. State, 661 So. 2d 75, 76 (Fla. Dist. Ct. App. 1995).

Here, however, Plaintiff's evidence indicates that there was not an "ongoing emergency that presents a serious threat of imminent harm to person or property" at the time of Plaintiff's arrest.  In fact, when Defendants' counsel asked Plaintiff, "[a]t the time you arrived at the park did it appear to you that the police officers were conducting an investigation of whatever had happened?", Plaintiff responded, "No, it didn't appear. They were just standing to the left.  So it's four to five officers just standing there."  DE 13 at 52; see also Monica Marie Tyson Deposition at 19-20, 31 (testifying that the police officers were not performing any duties at the park because the perpetrators had already fled and no one else was around).  Thus, when viewed in the light most favorable to Plaintiff, record evidence reflects that at the time Defendant Miceli arrested Plaintiff, the officers were merely "on the job."  See D.G. v. State, 661 So. 2d 75, 76 (Fla. Dist. Ct. App. 1995).

Merely being on the job, however, is not a "legal duty" as that term is contemplated within section 843.02, Florida Statutes.  See Jay v. State, 731 So. 2d 774, 775 (Fla. Dist. Ct. App. 1999) ("'It is important to distinguish between a police officer in the lawful execution of any legal duty and a police officer who is merely on the job.'" (quoting D.G., 661 So. 2d at 76)); see also W.W. v. State, 993 So. 2d 1182, 1185 (Fla. Dist. Ct. App. 2008) (holding deputies shoplifting investigation, "though performed during the course of his general duties, does not fall within the . . . category of legal duties" under Florida's obstruction statute).  Moreover, the relevant case law reveals

11

that an officer is performing a legal duty under Florida's obstruction statute only if criminal activity is actually taking place.  See Jay v. State, 731 So. 2d at 775-76 (reviewing cases).  Here, the alleged criminal activity – the battery on Omari Tyson – had already taken place and the perpetrators had fled before Plaintiff ever arrived on the scene.  Because there was "no criminal activity occurring at the time" Plaintiff arrived at the park, Defendant Miceli was "merely on the job and not engaged in the lawful execution of any legal duty."[4]  Id.

>   b. A Disputed Issue of Fact Exists Regarding Whether Plaintiff's Actions Constituted Obstruction or Resistance of Defendant Miceli's Lawful Duty

Even if Defendant Miceli had been engaged in the lawful exercise of a legal duty at the time of Plaintiff's arrest, that fact is not enough – in and of itself – to establish arguable probable cause.  Rather, to establish arguable probable cause, a reasonable officer, possessing the same knowledge as Defendant Miceli, would need to believe that Plaintiff obstructed the officers' exercise of a legal duty.  See Davis v. Williams, 451

---

[4]     Defendants rely on Freeman v. Town of Eatonville, 225 Fed. App'x 775, 778 (11th Cir. 2006) to demonstrate that Defendant Miceli was lawfully executing a legal duty.  In Freeman, police officers responded to a nightclub with a history of disturbances, including physical disturbances and gunfire.  A police officer "was ordered by his superior to close the doors" of the club.  Id. at 776.  When the officer attempted to close the nightclub, the owner "placed himself so that [the police officer] could not shut the club's doors."  Id. at 777.  The police officer then arrested the owner for violating section 843.02, Florida Statutes.  Id.  Unlike the case at bar, however, the Eleventh Circuit in Freeman found "[u]ndisputed evidence show[ing] that the crowd assembled outside [the nightclub] was sufficiently large and rowdy that officers from at least four law enforcement agencies took almost two hours to disperse the crowd."  Id. at 778-79.  Stated differently, the officer in Freeman was engaged in his lawful duty to close the club and disperse a large crowd.  Here, the evidence taken in the light most favorable to Plaintiff indicates that there was no large crowd that needed to be dispersed.  Rather, the evidence taken in the light most favorable to Plaintiff shows that the officers were merely standing in the park talking to the victims and their parents.

12

F.3d 759, 762 (11th Cir. 2006).  When viewed in the light most favorable to Plaintiff, the evidence reveals disputed issues of fact regarding whether a reasonable person, knowing all the facts Defendant Miceli had, would believe that Plaintiff interfered with the officers' exercise of a legal duty.

First, as discussed above, Plaintiff denies that he was shouting, using obscenity, threatening anyone, waving his arms in the air, or pacing back and forth with clenched fists.  See Plaintiff's Affidavit.  Second, evidence in the record shows that no unruly or hostile crowd was gathered around Plaintiff or Defendant Miceli at the time of Plaintiff's arrest.  Third, Plaintiff's evidence reveals that Defendant Miceli's fellow officers told Defendant Miceli that Plaintiff did not deserve to be arrested.[5]  See DE 16 at 29; DE 17 at 25-27.  Fourth, there is no evidence in the record that Defendant Miceli ever "conduct[ed] a reasonable investigation to establish probable cause."  Tillman v. Coley, 886 F.2d 317, 321 (11th Cir. 1989); see also Harris v. Lewis State Bank, 482 So. 2d 1378, 1382 (Fla. Dist. Ct. App. 1986) ("Where it would appear to a 'cautious man' that further investigation is justified before instituting a proceeding, liability may attach for failure to do so, especially where the information is readily obtainable, or where the accused points out the sources of the information.").  To the contrary, it appears that if Defendant Miceli had made any inquiry whatsoever, he would have quickly determined from either Plaintiff or his fellow officers that Plaintiff was the father of one of the victims and that he had not, as Defendant Miceli apparently believed, already told Plaintiff to

---

[5]    This fact alone is significant and tends to undermine Defendants' assertion that a reasonable officer, possessing the same knowledge as Defendant Miceli, would believe that Plaintiff obstructed the officers' exercise of a legal duty.

leave the scene.  Consequently, whether Defendant Miceli had arguable probable cause to arrest Plaintiff for obstructing justice involves several disputed issues of fact.

Moreover, "Florida courts have generally held, with very limited exceptions, that physical conduct must accompany offensive words to support a conviction under [section] 843.02."  Davis v. Williams, 451 F.3d 759, 765 (11th Cir. 2006) (citing State v. Dennis, 684 So. 2d 848, 849 (Fla. Dist. Ct. App. 1996) (holding police did not have probable cause to arrest defendant for obstruction when defendant was yelling street term "ninety nine" which means police were in the area while undercover officers were attempting drug bust of drug dealer); D.G. v. State, 661 So. 2d 75, 76 (Fla. Dist. Ct. App. 1995) (finding juvenile's verbal protests and refusal to answer officer's questions, unaccompanied by physical opposition or threats, did not constitute obstruction)).  Indeed, "[w]ords alone may result in obstruction of justice [only] where the officer in question is 1) serving process; 2) legally detaining a person; or 3) asking for assistance [in an emergency]."  Davis v. Williams, 451 F.3d 759, 765 n.9 (11th Cir. 2006) (quoting Francis v. State, 736 So. 2d 97, 99 n.2 (Fla. Dist. Ct. App. 1999)).

For example, in J.G.D. v. State, 724 So. 2d 711, 711-12 (Fla. Dist. Ct. App. 1999) (cited in Davis v. Williams, 451 F.3d 759, 765 n.9 (11th Cir. 2006)), the court held that no probable cause for arrest for obstruction existed despite a police order directing the defendant to leave an apartment complex, despite the defendant's "loud and profane" protests, and despite the gathering of an "unruly crowd."  Id. at 711.  The court ruled that the defendant's words were insufficient to justify any wrongdoing, or to amount to a physical obstruction of the officers.  See id. at 712.

Nonetheless, Defendants point to several cases that they contend support their

14

argument.  In particular, Defendants rely upon <u>Sullivan v. City of Pembroke Pines</u>, No.
04-60067-CIV, 2005 WL 6108998, at *1 (S.D. Fla. April 15, 2005) to establish that
Defendant Miceli had probable cause to arrest Plaintiff for violating section 843.02,
Florida Statutes.  In <u>Sullivan</u>, a police officer was attempting to resolve an argument
between Sullivan and her daughter.  <u>Id.</u>  Undisputed evidence revealed that the officer
repeatedly told Sullivan to wait by her vehicle while he spoke to Sullivan's daughter, but
Sullivan "leaned into the officer to read the name embroidered onto his uniform."  <u>Id.</u>
Sullivan, therefore, verbally and *physically* impeded the police officer from talking to
Sullivan's daughter.  <u>See id.</u>  Also, the Court had the benefit of a tape recording of
Sullivan's interactions with the arresting officer which depicted Sullivan's voice, tone,
volume (i.e., "yelling"), mental state (i.e., "distraught"), etc., at the time of her arrest.

Here, on the other hand, evidence in the record reflects that it was Defendant
Miceli who approached Plaintiff and yelled at Plaintiff.  <u>Sullivan</u>, therefore, is readily
distinguishable from the facts before the Court.  <u>See Sullivan v. City of Pembroke
Pines</u>, 161 Fed. App'x 906, 908-09 (11th Cir. 2006) ("Sullivan was arrested only after
she repeatedly approached Scopa and interfered with his investigation. . . . Sullivan
repeatedly interrupted him . . . .").  Indeed, in the case at bar, Plaintiff has averred that
he was talking, albeit loudly, to another officer who had no apparent problem with
Plaintiff's behavior when Defendant Miceli approached Plaintiff and instructed him to
leave.  Such a disputed issue of fact undermines any argument that Plaintiff's behavior
impeded Defendant Miceli from executing a legal duty.

Defendants also rely on <u>United States v. Lyons</u>, 403 F.3d 1248 (11th Cir. 2005)
to show that Defendant Miceli had probable cause to arrest Plaintiff for a violation of

15

section 843.02.  The court in <u>Lyons</u>, however, was not resolving a motion for summary judgment where the judge views all of the facts in the light most favorable to the non-moving party.  <u>See</u> <u>id.</u>  Moreover, Lyons was arrested for disorderly conduct rather than a violation of section 843.02.  <u>Lyons</u>, therefore, provides even less guidance than <u>Sullivan</u>.

Defendants also direct the Court to <u>Delaney v. State</u>, 489 So. 2d 891, 892 (Fla. Dist. Ct. App. 1986) to show that Defendant Miceli had probable cause to arrest Plaintiff.  Like <u>Lyons</u>, however, the Court in <u>Delaney</u> was not resolving a motion for summary judgment where the court takes the facts in the light most favorable to the non-moving party.  Also, as in <u>Lyons</u>, the arrestee in <u>Delaney</u> was arrested for disorderly conduct, rather than obstructing an officer from performing a duty.  <u>Delaney</u> is not applicable to the case at bar.

Viewing the evidence in the light most favorable to Plaintiff, Defendant Miceli lacked even arguable probable cause to arrest Plaintiff for violating section 843.02, Florida Statutes.  The Court, therefore, rejects Defendant Miceli's argument that the doctrine of qualified immunity bars Plaintiff's claims against him.

2. Probable Cause

As demonstrated above, Defendant Miceli lacked arguable probable cause to arrest Plaintiff.  If "there is an insufficient showing of arguable probable cause, then there is clearly an insufficient showing of probable cause."  <u>Davis</u>, 451 F.3d at 764 n.7.  Consequently, the Court will deny Defendants' Motion for Summary Judgment.

III. CONCLUSION

In light of the foregoing it is **ORDERED AND ADJUDGED** that Defendants'

Motion for Summary Judgment [DE 11] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida this 25th day of March, 2010.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record.